# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-4143/04-1256

_____

Dimpal V. Patel,      *
     *
     Petitioner,      *
     *
     *    Petitions for Review of an
     v.      *    Order of the Board of
     *    Immigration Appeals.
John Ashcroft, Attorney General of      *
the United States,      *
     *
     Respondent.      *

_____

Submitted: January 16, 2004
Filed: July 13, 2004

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Dimpal V. Patel, a citizen of India, petitions for review of the Board of Immigration Appeals' (BIA's) order dismissing her asylum application and denying her motion to remand her case to consider her application for an adjustment of status. Ms. Patel sought the adjustment pursuant to the approved visa petition filed by her husband, whom she married while removal proceedings were pending. We grant the petition for review, vacate the BIA's order, and remand for proceedings consistent with this opinion.

I

We start with an excursion through the labyrinthine procedural history of this case. In 1997, three years after Ms. Patel entered the United States illegally, her father filed a visa petition on her behalf, and on March 31, 1998, Ms. Patel filed an application for political asylum while the visa petition was pending. In 1999, with the petition still pending, the Immigration and Naturalization Service[1] (INS) denied her asylum application, and she was ordered removed from the United States in March 2000. After she appealed the removal order to the BIA, the case took several unexpected turns.

On April 18, 2000, before the BIA considered her appeal, the INS finally approved the visa petition. Consequently, on April 12, 2001, Ms. Patel moved the BIA to remand her case for the Immigration Judge (IJ) to consider her application for adjustment of status pursuant to the approved petition. On August 17, 2001, the BIA granted the motion, and the IJ later set a hearing date of November 20, 2001. The case might have come to an auspicious ending then had Patel's father himself not been ordered removed from the United States in the interim, thus extinguishing the approved visa petition.

Happily for Ms. Patel, another event also occurred before the November 20 hearing. On August 15, 2001, two days before the BIA granted her first motion to remand the case, she married Ketan Patel, a United States citizen, who filed his own

___

[1]The Homeland Security Act of 2002 transferred INS functions to the new Department of Homeland Security, where immigration enforcement functions fall within the Directorate of Border and Transportation Security, while immigration services fall within the Bureau of Citizenship and Immigration Services. On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and its functions were fully transferred to the new Department of Homeland Security. For ease of reference, this opinion will refer to the agency as the INS.

visa petition on her behalf. The race was on again. Would one arm of the government, the INS, approve her visa petition before another arm, the BIA, took her case under submission and likely ordered her removal?

When the November 20 hearing date arrived, Ms. Patel predictably moved for a continuance to give the INS the opportunity to adjudicate her husband's visa petition. The IJ properly denied Patel's motion and sent the underlying appeal of the original removal order back to the BIA. Facing an administrative appeal for the second time, Ms. Patel now challenged both the removal order and the denial of her motion to continue.

Ms. Patel's timing was again felicitous, for the INS approved her husband's visa petition in January 2002, before the BIA considered her appeal. As a result, Ms. Patel withdrew as moot her appeal of the denial of her motion to continue, and she moved the BIA to remand the case again, this time to permit her to apply for adjustment of status pursuant to her husband's now-approved visa petition.

In support of her motion, Ms. Patel submitted the notice of her husband's approved visa petition as evidence she had entered the marriage in good faith. The BIA found the evidence insufficient, denied the motion, dismissed the appeal of the removal order, and granted Ms. Patel's motion for a voluntary departure. The present petition to this court followed.[2] The parties agree that the question presented is

---

[2]While this petition was pending, Ms. Patel moved the BIA to reconsider its decision and reopen her case. The BIA denied this new motion, and she brought a second petition, this time seeking review of the BIA's denial of her motion to reconsider and reopen. Because we grant relief on her first petition, we dismiss the second petition as being moot. See Ramirez-Alejandre v. Ashcroft, 319 F.3d 365, 382 (9th Cir. 2003) (stating a motion to reopen and a motion to remand are functional equivalents under BIA procedure).

whether the approved visa petition constitutes clear and convincing evidence Ms. Patel's marriage was bona fide, thus making her eligible for an adjustment of status.

II

A.      Standard of Review

The parties first dispute the applicable standard of review. On the one hand, the government maintains we review the BIA's denial of a motion to remand for abuse of discretion. See Margalli-Olvera v. INS, 43 F.3d 345, 355 (8th Cir. 1995). On the other hand, because the BIA's decision rested on a legal interpretation of the administrative law, Ms. Patel urges us to review the decision *de novo*, a standard under which we accord substantial deference to the agency's interpretation of the statutes and regulations it administers, see Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002), but do not defer to legal interpretations that are arbitrary, capricious, or manifestly contrary to the statutory law. Shaar v. INS, 141 F.3d 953, 955-56 (9th Cir. 1998). See also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-845 (1984).

Each party, of course, is partially right, as appellate review of this matter involves both standards: First, *de novo* review of the BIA's interpretation of the relevant statutes and regulations, and then abuse-of-discretion review of the remand decision grounded on that interpretation. See Regalado-Garcia, 305 F.3d at 787 (reviewing statutory construction *de novo* and denial of motion to reopen for abuse of discretion).

B.      Analysis

We conduct our analysis by connecting the dots between the applicable statutory and regulatory provisions. The starting point, 8 U.S.C. § 1255(e)(1),

generally bars the Attorney General from adjusting the status of an alien seeking an immigrant visa on the basis of a marriage entered into while removal proceedings were pending against the alien. The statute, however, carves out an exception for an alien who establishes by clear and convincing evidence, to the satisfaction of the Attorney General, that he or she entered into a lawful marriage in good faith and not to procure admission as an immigrant. 8 U.S.C. § 1255(e)(3); 8 C.F.R. § 245.1(c)(9)(iii)(F). Importantly, an approved visa petition constitutes *primary* evidence of eligibility for the § 1255(e)(3) bona-fide marriage exemption. See 8 C.F.R. § 245.1(c)(9)(v).

In its brief, the government acknowledges this statutory framework but also omits the critical language in § 245.1(c)(9)(v): Other than the approved visa petition, "[t]he applicant will not be required to submit additional evidence to qualify for the bona fide marriage exemption . . . unless the district director [who approves the petition] determines that such additional evidence is needed . . . ." That is, the approved visa petition normally suffices to qualify for the exemption.

Here, the district director interviewed the Patels, and after considering other evidence they submitted, the director approved the visa petition without more, implicitly concluding they had demonstrated the bona fides of their marriage. See 8 C.F.R. § 245.1(c)(9)(v). The notice of the approved visa petition, therefore, should have sufficed to bring this case under the bona-fide marriage exception of § 1255(e)(3).

Relying on its decision in Matter of Velarde-Pacheco, 23 I. & N. Dec. 253 (BIA 2002), 2002 WL 393173 (BIA), the BIA held that Ms. Patel was obligated to introduce evidence of her courtship, wedding, and married life. The BIA, however, misapplied Velarde by reading it to demand a greater degree of proof than the statute and regulations require. In Velarde, the BIA required other clear and convincing

evidence because the visa petition was *pending*.[3] Id. at 254. In contrast, where the agency has already adjudicated and approved the petition, the notice of approval suffices under the statutory framework to prove the bona fides of the marriage.

The government also cites various Ninth Circuit cases for the proposition that "an approved visa petition alone does not automatically entitle an alien to adjustment of status." See, e.g., Agyeman v. INS, 296 F.3d 871, 879 (9th Cir. 2002). That proposition, however, refers to the IJ's ultimate discretionary decision to accord or deny the status after examining the merits of an eligible alien's application. Here, that would occur *after* the BIA remands the case to the IJ, who has exclusive jurisdiction to decide the adjustment of status application. Id. As Agyeman itself states, the approved petition does establish the alien's *eligibility* for adjustment of status. Id.

Alleging Ms. Patel's asylum application was frivolous, the government finally argues the purpose of the application, and the subsequent appeal, was to delay until Ms. Patel could reach another method for deriving lawful status in the United States. The government essentially contends a reversal by this court would reward frivolous applications and other delay tactics. Needless to say, this court would be loath to condone, much less encourage, frivolous claims of any sort.

The record in this case, however, does not support the government's allegation Ms. Patel filed a frivolous application. While the IJ who presided over the November 2001 hearing remarked that the asylum application was frivolous, the BIA expressly

---

[3]Indeed, the point of Velarde was to prevent the deportation of the category of aliens who had entered into a bona fide marriage during their removal proceedings. Precisely because aliens so-classified did not have an approved visa petition as prima facie evidence of the bona fides of their marriage, the BIA gave them the opportunity to submit other clear and convincing evidence to support their claims. Thus, Velarde expands, rather than contracts, the number of aliens who may benefit from the bona-fide marriage exception.

found that the IJ who actually adjudicated and denied the asylum application on March 9, 2000 "concluded the application was not frivolous." Joint Appendix at 3.

Moreover, the same asylum application undergirded the two approved visa petitions in this case. Pursuant to the first petition, the father's, the government remanded the case for an adjustment of status without any complaint regarding the underlying asylum application. If the asylum claim did not represent an impediment the first time the BIA remanded the case, we see no reason why the claim would inhibit remand to the IJ where the statutory framework so plainly supports Ms. Patel's position. As far as we can tell, therefore, Ms. Patel acted within her legal right to pursue her asylum application, even if she perhaps also harbored the understandable hope that the proceedings would delay her deportation for a better day.

Finally, in the sound exercise of his discretion, the Attorney General may still deny Ms. Patel the adjustment, should other evidence belie the legitimacy of her marriage on remand. Here, we only determine the approved visa petition makes Ms. Patel facially eligible for the adjustment of status.

III

Because the BIA denied Ms. Patel's motion on the basis of a legal interpretation manifestly contrary to the plain meaning of the statute and its regulations, the BIA abused its discretion when it denied the motion and dismissed her appeal. Accordingly, we grant the petition for review, vacate the BIA's order, and remand for proceedings consistent with this opinion.

_____